UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
at COVINGTON

Civil Action No. 13-15-HRW

CHRISTINE MESSER, PLAINTIFF,

v. **MEMORANDUM OPINION AND ORDER**

MICHAEL J. ASTRUE
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

Plaintiff has brought this action pursuant to 42 U.S.C. §405(g) to challenge a final decision of the Defendant denying Plaintiff's application for disability insurance benefits and supplemental security income benefits. The Court having reviewed the record in this case and the dispositive motions filed by the parties, and being otherwise sufficiently advised, for the reasons set forth herein, finds that the decision of the Administrative Law Judge is supported by substantial evidence and should be affirmed.

**I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff filed her current application for disability insurance benefits and supplemental security income benefits, alleging disability beginning on May 5, 1999. This application was denied initially and on reconsideration. On March 30, 2011, an administrative hearing was conducted by Administrative Law Judge

Christopher McNeil (hereinafter "ALJ"), wherein Plaintiff, accompanied by counsel, testified. At the hearing, Donald Shrey, Ph.D., a vocational expert (hereinafter "VE"), also testified.

At the hearing, pursuant to 20 C.F.R. § 416.920, the ALJ performed the following five-step sequential analysis in order to determine whether the Plaintiff was disabled:

> Step 1: If the claimant is performing substantial gainful work, he is not disabled.
>
> Step 2: If the claimant is not performing substantial gainful work, his impairment(s) must be severe before he can be found to be disabled based upon the requirements in 20 C.F.R. § 416.920(b).
>
> Step 3: If the claimant is not performing substantial gainful work and has a severe impairment (or impairments) that has lasted or is expected to last for a continuous period of at least twelve months, and his impairments (or impairments) meets or medically equals a listed impairment contained in Appendix 1, Subpart P, Regulation No. 4, the claimant is disabled without further inquiry.
>
> Step 4: If the claimant's impairment (or impairments) does not prevent him from doing his past relevant work, he is not disabled.
>
> Step 5: Even if the claimant's impairment or impairments prevent him from performing his past relevant work, if other work exists in significant numbers in the national economy that accommodates his residual functional capacity and vocational factors, he is not disabled.

Subsequently, the ALJ issued his decision finding that Plaintiff was not

disabled (Tr. 22-32).

Plaintiff was thirty-five on the date of the ALJ's decision (Tr. 31, 106). Plaintiff has a ninth grade education and past relevant work experience as a cashier (Tr. 115, 122). Plaintiff alleges she is unable to work due to scoliosis, degenerative disc disease of her lumbar spine, carpal tunnel syndrome, atrophic right kidney, depression and anxiety, history of a MSRA infection, bilateral foot and ankle pain, restless leg syndrome, severe sleep apnea, obesity, hypertension and irritable bowel syndrome (IBS).

The ALJ found Plaintiff had a combination of severe impairments, including degenerative changes in the lumbar spine, degenerative changes in the left ankle/foot, depressive disorder, panic disorder, pain disorder, and borderline intellectual functioning (Tr. 25); however, she did not have an impairment or combination of impairments that met or equaled one of the listed impairments at 20 C.F.R. pt. 404, subpt. P, app. 1, including Listing 1.04(A) (Tr. 28,). The ALJ determined that Plaintiff retained the residual functional capacity (RFC) to perform medium work activity, with the following additional limitations: she can push or pull 50 pounds frequently, 25 pounds occasionally with hand or foot controls; stand or walk about six hours and sit about six hours in an eight-hour day; cannot climb ladders, ropes or stoop, kneel, crouch, or crawl; must avoid

3

concentrated exposure to hand-held vibrating tools and whole body exposure to vibration (Tr. 29). Due to mental impairments, the ALJ determined Plaintiff had the following mental limitations: understand and remember simple instructions; sustain attention to complete simple repetitive tasks where production quotas are not critical; tolerate co-workers and supervisors with limited interpersonal demands in an object-focused nonpublic work setting; and adapt to routine changes in a simple work setting (Tr. 29). Given this RFC, the ALJ determined Plaintiff would be unable to return to her past relevant work (Tr. 31). Relying on vocational expert (VE) testimony, the ALJ found Plaintiff retained the RFC to perform other jobs existing in significant numbers in the national economy (Tr. 31-32). As a result, the ALJ determined Plaintiff was not disabled (Tr. 32).

The Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the final decision of the Commissioner. Plaintiff thereafter filed this civil action seeking a reversal of the Commissioner's decision. Both parties have filed Motions for Summary Judgment and this matter is ripe for decision.

## II. ANALYSIS

### A. Standard of Review

The essential issue on appeal to this Court is whether the ALJ's decision is

supported by substantial evidence. "Substantial evidence" is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). If the Commissioner's decision is supported by substantial evidence, the reviewing Court must affirm. *Kirk v. Secretary of Health and Human Services*, 667 F.2d 524, 535 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). "The court may not try the case *de novo* nor resolve conflicts in evidence, nor decide questions of credibility." *Bradley v. Secretary of Health and Human Services*, 862 F.2d 1224, 1228 (6th Cir. 1988). Finally, this Court must defer to the Commissioner's decision "even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ." *Key v. Callahan,* 109 F.3d 270, 273 (6th Cir.1997).

### B. Plaintiff's Contentions on Appeal

Plaintiff contends that the ALJ's finding of no disability is erroneous because: (1) the ALJ did not properly consider the opinion of consultative psychologist Mark Kroger; (2) the ALJ did not properly evaluate Plaintiff's credibility and (3) the ALJ improperly relied upon the testimony of the VE.

5

## C. Analysis of Contentions on Appeal

Plaintiff's first claim of error is that the ALJ did not properly consider the opinion of consultative psychologist Mark Kroger.

Plaintiff underwent a psychological consultative evaluation with Mark Kroger, M.S., on September 9, 2009. (Tr. 286-294). He administered IQ testing, which revealed that Plaintiff's Verbal IQ was 75, her Performance IQ was 75, and her Full Scale IQ was 73 (all within the borderline range of intelligence). (Tr. 290). He reported that Plaintiff had moderate deficits in her ability to differentiate essential from non-essential details, in her mental arithmetic reasoning, and in her short term auditory memory skills. *Id.* He further reported she had mild deficits in her general learning ability and language development, in her general fund of information and long term memory, in her ability to interpret social situations, and in her social judgment and use of common sense. *Id.* Plaintiff obtained scores on the Wide Range Achievement Test Revision Four (WRAT-4) which were equivalent to grade 6.5 in math computation, grade 7.7 in spelling, and grade 8.1 in word reading. *Id.*

Dr. Kroger also administered the Symptom Assessment 45 (SA 45) Questionnaire, which he explained was an objective measure of symptom presence. (Tr. 291). He reported that Plaintiff had a "severe" elevation on the scale

associated with phobic anxiety, "moderate" elevation on the scales associated with anxiety, depression, obsessive-compulsive tendencies, somatic tendencies, interpersonal sensitivity, and psychotic-like thinking. *Id.* Because Plaintiff reported 14 "moderately extreme" symptoms and 16 "extreme" symptoms, and she reported that only 6 of 45 items did not apply to her at all, Dr. Kroger opined that Plaintiff "appears to have utilized a response style that tended to maximize reports of symptomatology." *Id.* Plaintiff also obtained a Total Raw Score of 48 on the Beck Depression Inventory II and a Total Raw Score of 39 on the Beck Anxiety Inventory. Based upon these scores, Dr. Kroger opined that Plaintiff "appears to have utilized a response style that tended to maximize reports of symptomatology." *Id.*

He diagnosed Plaintiff with Panic Disorder with Agoraphobia, Pain Disorder Associated with Both Psychological Factors and a General Medical Condition (rule out Undifferentiated Somatoform Disorder), Borderline Intellectual Functioning, and Inadequate & Inferior Personality Traits. (Tr. 292). He opined that Plaintiff's ability to relate to others (other than to immediate family) and her ability to tolerate stress and pressure and to accept criticism were "moderately to markedly impaired." (Tr. 294).

The ALJ properly considered Kroger's opinion and rejected one aspect of

7

his opinion that was not supported by his report and inconsistent with the record as a whole (Tr. 31).

The weight afforded a doctor's opinion on the issue(s) of the nature and severity of a claimant's impairments depends upon the examining relationship or treating relationship the doctor may have had with the claimant, the evidence the doctor presents to support her opinion, how consistent the doctor's opinion is with the record as a whole, the doctor's specialty, and other factors. *See* 20 C.F.R. §§ 404.1527©, 416.927©.

Dr. Kroger opined that Plaintiff's ability to understand and follow simple directions was fair to only mildly impaired (Tr. 294). By finding Plaintiff was limited to simple instructions, the ALJ's RFC finding sufficiently addressed that aspect of Dr. Kroger's opinion (Tr. 29, Finding No. 6). The ALJ also addressed Dr. Kroger opinion that Plaintiff's ability to sustain attention and concentration was overall mildly limited and her ability to relate to others is moderately to markedly impaired by limiting Plaintiff to simple repetitive tasks where production quotas are not critical, and limited interpersonal demands in an object-focused nonpublic work settings (Tr. 29, Finding No. 6). However, regarding Dr. Kroger's opinion that Plaintiff's ability to tolerate stress and pressure and accept criticism appears to be moderately to markedly affected, the

8

ALJ properly discounted it (Tr. 31, 294). The ALJ specifically stated that he discounted the portion of Dr. Kroger's opinion regarding the severity of Plaintiff's ability to tolerate stress and pressure because the opinions were based on Plaintiff's subjective reports and Plaintiff's exaggerated endorsement of symptoms as evidenced by the SA-45 and the Beck inventories administered by Dr. Kroger (Tr. 31). Lending credence to the ALJ's decision is the fact that the only testing data Dr. Kroger cited to in support of his opinion regarding Plaintiff's ability to tolerate stress and pressure is showing of "severe" difficulty related to phobic anxiety on her SA-45 and the Beck Inventories (Tr. 293). However, Dr. Kroger stated that Plaintiff appears to have responded to the SA-45 "in a manner that tended to exaggeratively document the presence of symptomology." (Tr. 293). Dr. Kroger also noted that the results of the Beck Inventories also suggested that Plaintiff likely utilized an exaggerative response style in her responses, "resulting in indications of 'severe' affective difficulties in both instruments." (Tr. 293).

Relying upon lack of supporting data and inconsistencies with the record as a whole, the ALJ properly articulated sufficient reasons for discounting a portion of Dr. Kroger's opinion. As such, the Court finds no error in this regard.

Plaintiff's second claim of error is that the ALJ did not properly evaluate Plaintiff's subjective complaints.

9

An ALJ "is not required to accept a claimant's subjective complaints and may properly consider the credibility of a claimant when making a determination of disability." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, (6th Cir. 2003) (citations omitted). The Sixth Circuit has developed a two-prong test to evaluate a claimant's allegations of disabling pain:

First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (*quoting Felisky v. Bowen*, 35 F.3d 1027, 1038-39 (6th Cir.1994)). The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, her statements concerning the intensity, persistence and limiting effects of these symptoms were not credible (Tr. 29). The ALJ's decision shows proper application of the pain standard. The ALJ provided several reasons for finding Plaintiff's subjective testimony not fully credible. For example, the ALJ found Plaintiff's allegations of disabling back pain were not supported by the objective evidence and clinical findings (Tr. 30). Although Plaintiff's MRIs show

degenerative changes, there is no evidence of central canal, formaminal stenosis, or nerve impingement (Tr. 30, 445). Further, as the ALJ discussed, Plaintiff only had conservative treatment for her back and surgery was never recommended (Tr. 30, 426).

Likewise, the ALJ found that despite Plaintiff's allegations of disabling left ankle/foot pain, Dr. Gates' opined Plaintiff's MRI showed only mild changes in the tendon, and mild plantar fasciitis (Tr. 434). Dr. Gates also found no clinical evidence of a tear (Tr. 434). Dr. Gates only recommended conservative treatment (Tr. 441).

With regard to Plaintiff's sleep apnea, Irritable Bowel Syndrome, and diarrhea, the ALJ acknowledged Plaintiff's complaints, but noted there was no evidence demonstrating that Plaintiff suffered from any functional limitations resulting from the alleged impairments. *See Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) ("The mere diagnosis [of a condition], of course, says nothing about the severity of the condition."). For example, as discussed by the ALJ, Plaintiff's sleep apnea was accommodated by a CPAP machine (Tr. 405). Plaintiff reported only mild insomnia without any daytime symptoms after using the CPAP (Tr. 405). Plaintiff argues the CPAP was not effective because Plaintiff had trouble with the face mask. Pl.'s Br. at 17. However, Dr. Brijiwal's records show

that Plaintiff changed her face mask and was doing well with her CPAP (Tr. 405). As properly noted by the ALJ, if Plaintiff was continuing to have problems with her mask or sleep apnea, Plaintiff could have sought further treatment from Dr. Brijiwal. Dr. Brijiwal's recommendation that Plaintiff see him in one year only further bolsters the ALJ's finding that Plaintiff was not having trouble with her CPAP as of her last visit with Dr. Brijiwal (Tr. 28).

Contrary to Plaintiff's contention, the ALJ clearly considered Plaintiff's records from Northkey Community Care. The ALJ refers to Plaintiff's Northkey treatment when he notes that Plaintiff has continued to see a therapist related to her depression and panic disorder (Tr. 26) and in partially discounting the State agency physician's opinions (Tr. 31). Further, it is clear from the RFC that the ALJ accounted for Plaintiff's mental limitations, including those supported by her Northkey records (Tr. 29, Finding No. 6). Plaintiff's Northkey records do not contain any opinions or medical evidence contrary to the ALJ's RFC finding that Plaintiff's mental impairments limited her to simple instructions, simple repetitive tasks where production quotas were not critical, routine changes in a simple work setting, and needed a work environment with limited interpersonal demands in an object-focused nonpublic work setting (Tr. 29, Finding No. 6).

In deeming Plaintiff's subjective complaint less than credible, the ALJ

12

provided a thorough rationale for his credibility findings that comported with the regulations and caselaw. As such, the Court finds no error in this regard.

Finally, Plaintiff maintains that the ALJ improperly relied upon the testimony of the VE.

The ALJ found Plaintiff could not perform her past relevant work (Tr. 31, Finding No. 7). *See* 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). The ALJ, therefore, had to determine if Plaintiff could perform other work. *See* 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). The ALJ utilized the framework of the Medical-Vocational Guidelines and the testimony of the VE to determine that a significant number of jobs existed in the national economy that Plaintiff could perform (Tr. 31-32). In response to a hypothetical question that included the ALJ's assessment of Plaintiff's RFC, the VE identified examples of jobs Plaintiff could perform give her limitations (Tr. 32, 522-23).

In attempting to establish error, Plaintiff offers a cursory argument that she would have more than two absences per month due to doctor's appointments and could, therefore, not be able to sustain full-time work. [Docket No. 15, Pl.'s Br. at p.16]. Without more, the Court is hard pressed to find that the ALJ's decision was not supported by substantial evidence. Plaintiff has not established that she had additional limitations in her ability to work. The ALJ, therefore, properly relied on

13

the VE's testimony to find that Plaintiff could perform other work.

## III. CONCLUSION

The Court finds that the ALJ's decision is supported by substantial evidence on the record. Accordingly, it is **HEREBY ORDERED** that the Plaintiff's Motion for Summary Judgment be **OVERRULED** and the Defendant's Motion for Summary Judgment be **SUSTAINED**. A judgment in favor of the Defendant will be entered contemporaneously herewith.

This 24th day of March, 2014.



Henry R. Wilhoit, Jr., Senior Judge